Case No. 1:25-cv-01275

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS — AUSTIN DIVISION

FILED
2025 SEP 15 AM 11:59
CLERK, US DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY _____ DEPUTY

**CURTIS MEEKS**
Plaintiffs,

v.

**ARMBRUST & BROWN, PLLC; et al,.**
Defendants.

---

## PLAINTIFF CURTIS MEEKS'S THIRD AMENDED COMPLAINT AND MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

---

COMES NOW, CURTIS MEEKS ("Plaintiff"), pro se, and files this his Amended Complaint pursuant to Federal Rule of Civil Procedure 15(a)(1)(B) as a matter of right, and in opposition to Defendants' Motion to Dismiss, and would show this Court the following:

**Jury Trial Demanded**

**This is not a de-facto appeal.** Plaintiffs seek relief **only** for Defendants' **out-of-court publications and business interference** directed to **non-party business recipients** (insurers, lenders, escrow/title, vendors, and tenants) that caused **new, independent injuries**. No remedy requested requires this Court to **review, modify, void, or enjoin** any state-court judgment, and **no damages** operate as a **refund, setoff, or alteration** of any state-court judgment.

## I. PRELIMINARY STATEMENT

1. This action concerns **post-judgment, extra-judicial** conduct: Defendants repeatedly **republished** accusations about Plaintiff **Curtis Meeks** and used those publications as a **business weapon, legal weapon and personal weapon** against Plaintiffs with **insurers,**

1

**lenders, escrow/title companies, tenants, vendors, legal arenas and community contacts.**

2. Plaintiffs do **not** ask this Court to review, modify, void, or enjoin any state-court judgment. Plaintiffs seek damages and **narrow, forward-looking relief** addressing Defendants' **out-of-court** conduct and its **independent injuries**.

## II. JURISDICTION AND VENUE

3. This Court has jurisdiction under **28 U.S.C. § 1331,** and supplemental jurisdiction over related state-law claims under **28 U.S.C. § 1367**.

4. Venue is proper in this District under **28 U.S.C. § 1391** because a substantial part of the events or omissions giving rise to the claims occurred here and Defendants reside and/or conduct business here.

## III. PARTIES & ROLES

5. **Curtis Meeks** is a natural person domiciled in Texas.

6. **Armbrust & Brown, PLLC ("A&B")** is a Texas law firm with its principal office in Austin, Texas. The record demonstrates that Armbrust & Brown leveraged its power and influence to procure favorable rulings and **drafted/submitted a fabricated Findings of Fact and Conclusions of Law (FOFCOL)** containing statements flatly contradicted by official reports and recordings.

7. **David King,** The record demonstrates **fraud upon the court and subornation of perjury**: video and transcript materials show Mr. King **coaching Co-Defendant Ali Arabzadegan** immediately prior to sworn testimony, followed by false statements under oath; Mr. King even challenged the Court to view the video that confirms the subornation.

2

8. **Guillermo Alarcón**, the record demonstrates that Mr. Alarcón co-authored and advanced filings that incorporate the fabricated FOFCOL and now appears as **lead counsel** directing the ongoing scheme, as reflected in recent signed filings.

9. **John Sigman**, The record demonstrates that Atain retained Mr. Sigman to **execute and advance** the wanton fraud upon the court through pleadings and case strategy that perpetuate the fabricated FOFCOL.

10. **Kenneth Carter**, The record demonstrates that Mr. Carter's **initial video-recorded admission** accepting responsibility for the subject fire was later **retracted under pressure** after representation by Mr. Sigman; the before/after recordings and communications establish coercion and inconsistency.

11. **Ali Arabzadegan, The record demonstrates that Mr. Arabzadegan, acting on advice from Armbrust & Brown, gave sworn statements proven false by contemporaneous documents and recordings—conduct satisfying every element of criminal perjury.**

12. **Atain Insurance Company** is an insurer conducting business in Texas. The record demonstrates that Atain **funded and directed** the defense strategy at issue; internal communications and filings reflect **racially charged** motivations and the continuation of the fabricated narrative.

13. Bound 2 LLC, The record demonstrates that Bound 2 LLC **purchased the subject property pendente lite** with notice of this litigation, making the transfer **voidable** and subject to equitable relief (lis pendens principles).

**IV. Clarification of Relationship; No "Partnership" as a Matter of Law**

A.   **Meeks expressly disavows Henderson's filings and rhetoric.**

Respectfully—and to remove any doubt as for my respect for the Constitution and this Court—Meeks did not conspire with, encourage, agree with, or engage in Henderson's style of litigating or the language used in his filings regardless of how warranted it may have seemed. Meeks's claims and defenses stand on their own record and evidence.

**B.  Meeks is a property owner, not a lessee, and is financially independent of Henderson.**

Meeks holds title to the subject property and operates independently. He is not financially reliant on Henderson in any capacity. Where Henderson performed discrete services, Meeks paid him as a service provider—nothing more.

**C.  A law firm (or an opposing party) cannot "declare" a partnership; courts apply statutory factors and evidence.**

Texas law controls whether a general partnership exists. An opposing lawyer's label—or even a drafted FOFCOL—cannot manufacture a partnership absent competent evidence satisfying the statute and controlling precedent.

1. **Statutory framework.**

    Under the Texas Business Organizations Code, *an association to carry on a business for profit as owners* creates a partnership **only** if supported by evidence evaluated under statutory factors. See **Tex. Bus. Orgs. Code § 152.051(b); § 152.052** (non-exclusive factors include: (1) intent to be partners; (2) right to participate in control; (3) agreement to share profits; (4) agreement to share losses or liabilities; and (5) contribution of money or property).

    Crucially, **receipt of profits is not partnership evidence** when the payment is for **wages, services, rent, or a debt,** among other exceptions. **Tex. Bus. Orgs. Code § 152.052(b)** (profit share exceptions).

2. **Texas Supreme Court test.**

The Texas Supreme Court requires a **totality-of-the-circumstances** review; **no single factor is necessary or sufficient**, and labels are not controlling. **Ingram v. Deere, 288 S.W.3d 886, 895–902 (Tex. 2009)** (clarifying § 152.052; courts must find evidence across the factors before concluding a partnership exists).

3. **No joint venture either.**

   A joint venture requires (i) a community of interest, (ii) an agreement to share profits, (iii) an agreement to share losses, and (iv) a mutual right of control. **St. Joseph Hosp. v. Wolff, 94 S.W.3d 513, 535 (Tex. 2002)**. Absent those elements, no joint venture exists.

4. **No "partnership by estoppel" on these facts.**

   Liability as a "purported partner" requires a **representation** that a partnership exists and **third party reliance** on that representation. **Tex. Bus. Orgs. Code § 152.304**. There is no such representation or reliance by Meeks.

5. **Pleading labels are not enough.**

   Conclusory assertions that parties were "partners" cannot survive federal pleading standards without concrete facts that satisfy the elements above. **Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007); Ashcroft v. Iqbal, 556 U.S. 662 (2009).**

   **D. Application to Meeks.**

- **No intent**: Meeks never agreed—expressly or implicitly—to be "partners" with Henderson.
- **No mutual control**: Henderson had no right to control Meeks's property or business.
- **No profit/loss sharing**: There was no agreement to share profits or losses; any payments to Henderson were **compensation for services** (squarely within § 152.052(b)'s exceptions).
- **Independent capital/ownership**: Meeks is the **owner**, not a lessee, and funded operations independently.

   **E. Requested ruling.**

5

The Court should reject any "partnership" theory as a matter of law and fact; disregard attorney characterizations or drafted findings that are unsupported by § 152.052 and **Ingram**; and adjudicate Meeks's claims and defenses independent of Henderson's filings or rhetoric.

## V. FACTUAL BACKGROUND

### A. Fraud Upon The Court

6. The ongoing acts of the following Officers of the Court—Armbrust & Brown, PLLC, David King, Guillermo Alarcon, John Sigman, and Jill Zyskowski—**knowingly and with wanton intent, fabricated the Findings of Fact and Conclusions of Law.** They deliberately inserted the blatantly false assertion that Plaintiff "caused" the fire, a claim they knew was directly contradicted by the official Austin Fire Department report which ruled the cause "Undetermined." This calculated subversion of the judicial process, exploiting a procedural default to present known perjury as fact, constitutes a fraud upon the court committed directly against Judge Soifer's tribunal.

7. Defendants **repurposed** that fabricated FOFCOL to injure Meeks beyond any courtroom, continuing long after entry of a state order and into the federal matters cataloged below.

8. After the state sanctions default, Defendants embarked on a **deliberate campaign of extrajudicial republication** to non-party business recipients—insurers, lenders, escrow/title companies, tenants, vendors, and community contacts—asserting criminality, arson, fabrication, and fraud.

9. These communications **were not** made to obtain judicial relief and **fall outside** any judicial proceeding channel. They were business weapons intended to influence underwriting, lending, title clearance, leasing, and vendor relations.

10. As a **direct and proximate** result, Plaintiffs suffered independent injuries: underwriting changes and premium hikes; withdrawn term sheets; impeded closings and refis; tenant/vendor losses; reputational and goodwill harm; impaired credit; out-of-pocket mitigation costs; loss of business opportunities; and severe emotional distress.

11. Without limitation, Defendants' extra-judicial publications include the following **representative** items (each to be further particularized by date, sender/recipient, subject line, and attachment hash in initial disclosures):

   a. **Insurer blast** asserting Meeks "caused" the fire, circulated post-judgment to underwriting ([Ex. D-1; F]).

   b. **Lender notice** referencing "arson/fabrication," sent to impair term sheets ([Ex. D; F]).

   c. **Title/escrow packet** attaching FOFCOL excerpts to stall closing clearance ([Ex. D]).

   d. **Tenant advisory** warning of "criminal investigation," aimed at inducing vacancy ([Ex. D; G]).

   e. **Vendor/contractor email** alleging "insurance fraud," to chill bids and performance ([Ex. F]).

   f. **Community-recipient message** pairing Meeks's name with "conspiracy/fabrication" ([Ex. G]).

   g. **Racial-animus communication** employing a racial epithet directed at Meeks, evidencing actual malice ([Ex. E]).

   h. **Multi-forum echo** re-posting the same accusations across new dockets to refresh public scrutiny ([Ex. H; G]).

   i. **Escalation thread** by counsel repeating accusations after the AFD "Undetermined" cause and criminal disposition were in hand ([Ex. C/C-1; Ex. B; Ex. F]).

   j. **Third-party forwarding** of accusations to additional non-party recipients (lender syndicates/brokers) ([Ex. F]).

   k. **Republishing to insurers after denial/reservation** to induce performance restrictions ([Ex. D-1]).

l. **Metadata-verified chains** proving origin, timing, recipients, and republication vectors.

12. Texas's **judicial-proceeding privilege** shields statements **made in the due course of a judicial proceeding** to participants in that proceeding; it does **not** immunize **business-aimed republications** to non-party recipients for non-adjudicative purposes. The communications identified above were sent **outside** any petitioning channel and to audiences (underwriters, lenders, tenants, vendors) **whose role was commercial, not judicial**.

13. Likewise, **attorney immunity** does not extend to **non-litigation business publications** to third parties or to **conduct foreign to the office of an attorney**. Defendants' extra-judicial emails, press-style circulations, and underwriting/title interference **are not advocacy before a tribunal**; they are commercial interference and defamation/disparagement acts aimed at nonparty decision-makers.

14. Because the publications were **(i)** outside any court filing or appearance, **(ii)** directed to nonparty commercial audiences, and **(iii)** untethered to obtaining judicial relief, **no absolute privilege attaches**. Any qualified privilege is defeated by **actual malice**, detailed below.

15. Defendants possessed and/or authored materials contradicting their statements—including the AFD "Undetermined" cause designation, certified criminal-docket dispositions, and contemporaneous recordings—yet **persisted** in publishing accusations of arson, criminality, and fabrication.

## B. Sanctions Default Posture

16. In underlying Travis County litigation, a **sanctions default** was entered. That posture does **not** constitute a causation finding and does **not** bind this Court to treat disputed assertions as true in this action.

17. Plaintiffs do **not** ask this Court to revisit or restrain any state-court judgment; the judgment's continued existence is **assumed** for purposes of this suit.

**C. Extra-Judicial Republications to Non-Party Recipients**

18. After the sanctions default, Defendants repeatedly **circulated statements** to **insurers, lenders, escrow/title companies, vendors, tenants, and community contacts**—audiences **outside** any adjudicative process—asserting that Meeks engaged in criminal conduct, arson, fabrication, fraud, or related wrongdoing.

19. These communications were **not** made to obtain judicial relief and are **not** protected by the judicial-proceeding privilege; they were directed at **business counterparties** to influence **underwriting, lending, escrow/title clearance, tenancy, and vendor relations**.

20. As a direct result, Plaintiffs experienced **underwriting changes, increased premiums, withdrawn term sheets, tenant losses, vendor withdrawal, reputational harm**, and other business impacts that **exist regardless** of the state judgment's continued existence.

21. Representative communications include, without limitation, post-judgment emails and letters to insurers and lenders asserting criminality and fabrication; notices to title/escrow referencing accusations to impede closings; and statements to tenants/vendors designed to dissuade dealings with Plaintiffs.

22. Plaintiffs will identify specific **dates, recipients, and business effects** for each communication in initial disclosures and discovery; exemplar communications are attached and incorporated by reference.

**D. Continuous, Public, and Extra-Judicial Scrutiny of Meeks (Post-Judgment Conduct)**

23. The record shows that **AFTER** entry of the state sanctions default—and **throughout** Henderson's vigorous appellate proceedings and other matters in multiple judiciaries Defendants **republished and amplified** the same fabricated accusations about **Curtis Meeks** to **non-party, non-privileged audiences** (insurers, lenders, title/escrow, current and

prospective tenants, vendors, and community contacts). These communications operated **outside** any courtroom and **outside** any request for judicial relief.

24. A **Jack Sigman email chain** and related communications (with full headers/metadata) demonstrate that Defendants' republications **persisted long after** the state order, **across multiple causes**, and were used to **shape third-party decisions** about coverage, underwriting, lending, vendor relationships, and leasing. *(Proposed Ex. F – Sigman email chain; representative dates, recipients, subject lines identified.)*

25. Public filings and responses across dockets—**NONE** authored by Meeks—but **repeatedly named Meeks** and pair his name and business with **criminality, fabrication, and conspiracy** labels, ensuring **renewed public scrutiny** each time a filing appeared, even though Meeks took no part in that filing. The **public filing index** compiled here identifies **forum, date, page, and snippet** for each instance placing Meeks under public or in-record scrutiny. *(Ex. G – Public Filing Index.)*

26. Defendants' **extra-judicial** republications did not merely recount litigation history; the communications **asserted** that Meeks "caused" a fire or engaged in criminal conduct—positions that **exceed** the sanctions order and contradict **AFD "Undetermined"** causation materials and the criminal-case disposition already identified. *(See Ex. C/C-1.)*

27. Several communications **reflect racial animus**, including use of a **racial epithet** directed at Meeks; that content demonstrates **actual malice** and an intent to **inflame** recipients and **prejudice** business counterparties. *(See Ex. E; additional instances in Ex. F and Ex. G.)*

28. Defendants **leveraged** these out-of-court communications to **impede** closings, refinancing, clear title, insurance performance, tenant relations, and vendor confidence—**separate and**

**apart** from any effect of a state judgment's existence. *(See Ex. D/D-1; see also Ex. F and Ex. G.)*

29. As a **direct and proximate** result of this **post-judgment, extra-judicial** conduct, Plaintiffs sustained **ongoing, independent injuries** including **reputational harm and goodwill loss; lost tenants and disrupted leases; increased premiums and adverse underwriting decisions; impaired credit and financing; out-of-pocket mitigation costs; loss of real property and business opportunities;** and **severe emotional distress.** These injuries flow from Defendants' **own publications and interference, not** from the mere existence of any state-court order.

30. To remove any doubt, **no relief** sought in this case requires the Court to **review, modify, void, or enjoin** any state-court judgment. The relief requested targets **Defendants' conduct**— including **extra-judicial republications** to non-privileged audiences and misuse of process as a **business weapon**—and seeks damages and narrowly tailored prospective remedies aimed at **stopping continuing misconduct** and **correcting third-party understanding** based on those out-of-court publications.

**E. Judicially Noticeable Cross-Forum Docket Activity (Continuous Public Scrutiny)**

31. The **public dockets** below (matters of judicial notice) show an unbroken pattern of filings that **name Curtis Meeks** and repeat the same accusations across **multiple judiciaries**—keeping those accusations in the public eye and in the hands of non-party business recipients **independent** of any state-court judgment.

**Third Court of Appeals — No. 03-24-00236-CV (Rickye Henderson v. Ali Arabzadegan) — Filed Apr. 10, 2024 (Case Type: Fraud)**

11

32. Public filings include: **Appellee's Brief (Jan. 27, 2025)** (public PDF, 396 KB); **Appellant's Brief (Oct. 28, 2024); Amended Reply (Feb. 7, 2025); Additional Authority (Aug. 2, 2025);** and a sustained run of public motions/notices in **Aug.–Sep. 2025** (e.g., **Appellant's Brief in Support** Aug. 18, 2025; **Appellant's Motion Supplement Record** Aug. 18 & 29, 2025; **Appellant's Motion Sanctions** Aug. 26, 2025; **Appellant's Rebuttal** Aug. 26, 2025; **Appellant's Memorandum of Law** Aug. 25, 2025; **Appellant's Motion Show Cause** Aug. 22, 2025).

33. The docket reflects **dozens of publicly accessible entries** through **Sept. 11, 2025** (including **Notice: Motion Granted in Part**), ensuring ongoing, repeated **public exposure** of Meeks alongside Henderson **well after** the sanctions default.

**Third Court of Appeals — No. 03-24-00752-CV (Rickye Henderson v. Kenneth Carter d/b/a Jack of All Trades) — Filed Nov. 15, 2024 (Case Type: Tort)**

31. Key public entries: **Appellant's Brief (Jan. 30, 2025); Appellee's Brief (Mar. 3, 2025); Memorandum Opinion — Affirmed (Apr. 3, 2025); Mandate — Affirmed (Jun. 24, 2025);** further public motions/notices through **Sept. 2025.**

34. The **affirmance** and **mandate** did not end the public stream of filings; subsequent docketed documents in **Aug.–Sept. 2025** kept the narrative live on a public website.

**W.D. Tex. — No. 1:25-cv-00450 (Judge Alan D. Albright) — Filed Mar. 26, 2025 — Terminated Aug. 19–20, 2025**

35. Public record shows referral to Magistrate; extensive filings by Henderson in **July–Aug. 2025** (e.g., **Notices** and **Motions** addressing fraud on the court, protective orders, consolidation), and **Order Adopting Report & Recommendations — Dismissed with Prejudice (Aug. 20, 2025).**

36. The docket includes **Notices of Filing** of a **Curtis Meeks declaration** (Aug. 6, 2025) and multiple motions invoking Meeks by name, placing him under **federal-court public scrutiny** independent of any state ruling

**W.D. Tex. — No. 1:24-cv-01208 (Judge Robert Pitman) — Filed Oct. 9, 2024 — Terminated Mar. 5, 2025**

37. Public entries include motion practice into early 2025 and a **Fifth Circuit affirmance** noted **Aug. 22, 2025**, leaving a durable public trail naming Meeks and related actors.

38. **W.D. Tex. — No. 1:25-cv-01179 (Judge David A. Ezra; Ref. Judge Mark Lane) — Filed Jul. 29, 2025**

39. Public party list (as of **Sept. 12, 2025**) includes **Armbrust & Brown, PLLC, Atain Specialty Insurance Company, David King, Kenneth Carter, Guillermo Alarcón**, and multiple judicial/governmental defendants; **Rickye Henderson** and **The ReJoyce Foundation** as plaintiffs.

40. This matter's public docket confirms an **ongoing federal dimension** in which Meeks's name and the accusations circulate in new filings, notices, and party lists, accessible to third parties. **Why this matters here.**

41. These judicially noticeable dockets confirm **continuous, public republication** and **visibility** of accusations about Meeks **across forums** and **over time**—a stream of **post-judgment, extrajudicial** exposure that fuels reputational harm, underwriting changes, and business interference **independent** of any state judgment.

42. Plaintiffs attach **Exhibit H (Docket Compilation)** summarizing the above entries by **court, case number, date, event, and short description**, and request judicial notice under **Fed. R.**

13

**Evid. 201** (existence and timing of filings) and **803(8)** (public records), without asking this Court to credit disputed factual assertions within those filings as true for their substance.

## VI. CAUSES OF ACTION

### COUNT I — DEFAMATION (All Defendants)

*Rooker–Feldman disclaimer for this Count: Liability turns exclusively on Defendants' own extra-judicial statements and acts to non-party recipients and does not require this Court to review or reject any state-court finding or order.*

42. Defendants published statements of fact about Plaintiffs to **non-party business recipients** asserting criminality, arson, fabrication, fraud, and other serious wrongdoing.

43. The statements were **false, unprivileged,** and **published** to third parties; Defendants acted with at least **negligence**, and in many instances **actual malice**, as shown by racial-animus content, knowledge of contradictory materials, and reckless disregard for truth.

44. Plaintiffs suffered **reputational harm, economic losses,** and **severe emotional distress**.

45. Damages include lost tenants/vendors, underwriting changes, withdrawn term sheets, mitigation costs, and reputational and goodwill harm.

### COUNT II — BUSINESS DISPARAGEMENT (All Defendants)

*Rooker–Feldman disclaimer for this Count: Liability turns exclusively on Defendants' own extra-judicial statements and acts to non-party recipients and does not require this Court to review or reject any state-court finding or order.*

46. Defendants published **false, disparaging statements** about Plaintiffs' business and property to third parties, causing **specific economic losses** including underwriting changes, withdrawn term sheets, tenant/vendor losses, and mitigation costs.

47. Defendants acted with **malice** or at least **reckless** disregard for truth or falsity.

### COUNT III — TORTIOUS INTERFERENCE WITH EXISTING & PROSPECTIVE RELATIONS (All Defendants)

*Rooker–Feldman disclaimer for this Count: Liability turns exclusively on Defendants' own extra-judicial statements and acts to non-party recipients and does not require this Court to review or reject any state-court finding or order.*

48. Plaintiffs had existing contracts and reasonable prospects with **tenants, lenders, insurers, escrow/title, and vendors**.

49. Defendants **willfully interfered** by disseminating **extra-judicial false statements** and leveraging those statements to **disrupt** relationships and transactions.

50. The interference proximately caused **economic loss** and other damages.

## COUNT IV — ABUSE OF PROCESS / MISUSE OF PROCESS (Limited to Extra-Judicial Leverage)

*Rooker–Feldman disclaimer for this Count: Liability turns exclusively on Defendants' own extra-judicial statements and acts to non-party recipients and does not require this Court to review or reject any state-court finding or order.*

51. Defendants **used process as a business weapon** by republishing litigation-adjacent statements **outside** adjudicative channels to pressure non-party business recipients, **not** for the legitimate purpose of obtaining judicial relief.

52. Plaintiffs suffered damages as a result, including **lost opportunities** and **reputational harm**.

## COUNT V — INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS (Gap-Filler)

*Rooker–Feldman disclaimer for this Count: Liability turns exclusively on Defendants' own extra-judicial statements and acts to non-party recipients and does not require this Court to review or reject any state-court finding or order.*

53. Defendants engaged in **extreme and outrageous** conduct—including **racial-animus-laden** publications and persistent **extra-judicial** republications of egregious accusations—to cause **severe emotional distress**.

54. Plaintiffs suffered **severe emotional distress**; IIED is pled in the alternative where other torts do not fully redress the conduct.

## COUNT VI — CIVIL CONSPIRACY / AIDING-AND-ABETTING (All Defendants)

*Rooker–Feldman disclaimer for this Count: Liability turns exclusively on Defendants' own extra-judicial collective statements and identical acts to non-party recipients and does not require this Court to review or reject any state-court finding or order.*

55. Defendants **agreed** to and engaged in **concerted extra-judicial publications** and **interference**, providing substantial assistance to each other to accomplish the wrongful ends alleged above.

56. Plaintiffs suffered **damages** proximately caused by the conspiracy and aiding-and-abetting.

57. **Estoppel (Judicial and Quasi-Estoppel).** Defendants cannot whipsaw this Court and outside audiences by advancing one set of "facts" to secure tactical advantage and then, when liability looms, disowning those same "facts" as mere advocacy or privileged opinion. Judicial estoppel bars such about-faces where (1) a party's current position is plainly inconsistent with its prior position, (2) a court accepted the prior position, and (3) the inconsistency is not inadvertent. *New Hampshire v. Maine*, 532 U.S. 742, 749–51 (2001); *In re Coastal Plains, Inc.*, 179 F.3d 197, 205–06 (5th Cir. 1999); *Reed v. City of Arlington*, 650 F.3d 571, 573–77 (5th Cir. 2011) (en banc). Having procured and weaponized the FOFCOL and related narratives to underwriters, lenders, tenants, vendors, and the public, Defendants are **judicially estopped** from recasting those statements as non-actionable. Independently, **quasi-estoppel (acceptance-of-benefits)** precludes a party from accepting and exploiting a position's benefits (funding, leverage, reputational harm to Plaintiffs) while later repudiating that position when it becomes burdensome. *Lopez v. Munoz, Hockema & Reed, L.L.P.*, 22 S.W.3d 857, 864 (Tex. 2000). The Court should hold Defendants estopped from (i) invoking privilege or "opinion" to evade accountability for extra-judicial republications and (ii) denying the very factual assertions they used to secure commercial and litigation advantage.

## VII. PRAYER FOR RELIEF

**Prospective Relief (narrow).** An order **enjoining future extra-judicial republication** to **nonparty business recipients** of **specific statements adjudicated false in this action**, and **targeted notices** to those **same recipients** clarifying the adjudicated falsity. **No relief** shall restrain execution of, offset, or otherwise alter **any state-court judgment**.

**Damages Segregation.** Plaintiffs' damages are **limited to** losses caused by Defendants' **out-of court publications and interference**—including **underwriting changes, withdrawn term sheets, tenant/vendor losses, reputational and goodwill harm, and mitigation costs**—and **expressly exclude** any refund, setoff, or alteration of a state-court judgment.

**Additional Relief.**

A. Compensatory, special, and consequential damages in an amount to be proven at trial;

B. Presumed and punitive damages where permitted by law;

C. Costs of suit and pre- and post-judgment interest;

D. Such other and further relief as the Court deems just and proper **consistent with the limitations stated above**.

## VIII. REQUEST FOR JUDICIAL NOTICE (Public Dockets)

Plaintiffs respectfully request judicial notice of the **existence and dates** of the public docket entries listed in **Exhibit H (Docket Compilation)**, pursuant to **Fed. R. Evid. 201(b)** and **803(8)**. Each entry is an **official court record** maintained by the Third Court of Appeals (Texas) and the United States District Court for the Western District of Texas. Judicial notice is appropriate for the **fact that these filings were made and are publicly accessible**, without regard to the truth of any disputed statements contained therein.

This request **does not** ask the Court to review, modify, or invalidate any state-court judgment, nor to adopt the truth of contested assertions. The entries are noticed to show **post-judgment,**

**extrajudicial exposure** of statements about **Curtis Meeks** to **non-party recipients** and the **continuing public visibility** causing **independent injuries** (underwriting changes, withdrawn term sheets, tenant/vendor losses, reputational harm).

## IX.  DEMAND FOR JURY TRIAL

Plaintiffs demand trial by jury on all issues so triable.

## X.  EXHIBITS

Plaintiffs incorporate by reference all exhibits previously filed. Lettering conforms to the existing index; prior exhibits (A–H) :

> **Exhibit A — Judge Soifer's "Judicial Death Sentence" Default Judgement State-Court Order / Record**
> Cause No. D-1-GN-23-001138. Offered solely to establish **timeline/context**; no relief here seeks to review, modify, void, or enjoin this order.

> **Exhibit B — APD Report Criminal Docket Disposition / Suspended**
> Certified **[disposition docket / letter / certification]** from APD (Austin Police Department). Demonstrates there is **no criminal adjudication** of arson against Meeks; rebuts extra-judicial "criminality" assertions sent to business recipients.

> **Exhibit C — Austin Fire Department Criminal Incident/Investigation Report (Cause: "Undetermined")**
> AFD report for **incident address number**, dated; cause of arson/fire recorded as **Undetermined**. Conflicts with extra-judicial statements circulated to insurers/lenders/tenants/legal realms/criminal realms implying arson.

> **Exhibit C-1 — AFD (Austin Fire Department) Email Authored by Chad Messersmith**
>
> **indicating an ongoing investigation,** A video recording where I personally identified the Insurance personnel, their insured Kenneth Carter who agreed when I asked him dis he inform the insurance agents that he caused the fire and that he was in fact the last one in the building affirmed by an insurance investigator.

> **Exhibit D — Title/Escrow/Lender Correspondence (Underwriting/Closing Impacts)**
> Communications with **title co./escrow/lenders**, evidencing **conditions, or delayed/denied closings** following receipt of the extra-judicial accusations about Meeks.

### Exhibit D-1 — Insurance Underwriting/Coverage Letters (Premium/Performance Impacts)

Carrier or broker letters.

### Exhibit E — Communications Reflecting Racial Animus (NI***R)

Email demonstrating the methods used to investigate an insurance claim, criminal claim and civil claim.

### Exhibit F — Jack Sigman Email Chain

Post-judgment email chain includes Armbrust & Brown, David King, Guillermo Alarcon, Jill Zyskowski affirming the ongoing illegal and improper conspiracy.

### Exhibit G — Public Filing Index (Meeks Across Dockets)

Throughout the intense legal battle between Rickye Henderson and the legal community where Henderson has produced an extreme number of communications to the entire Austin, Texas community where in those communications my name and business are attached and disseminated by defendants.

### Exhibit H — Docket Compilation (Judicially Noticeable Public Records) Consolidated list of public docket entries from:

**03-24-00236-CV** (3d Court of Appeals — *Henderson v. Arabzadegan*, filed **Apr. 10, 2024**)

**03-24-00752-CV** (3d Court of Appeals — *Henderson v. Carter*, filed **Nov. 15, 2024**)

**1:25-cv-00450** (W.D. Tex., Judge Albright — filed **Mar. 26, 2025**, terminated **Aug. 19–20, 2025**)

**1:24-cv-01208** (W.D. Tex., Judge Pitman — filed **Oct. 9, 2024**, terminated **Mar. 5, 2025**; 5th Cir. mandate noted **Aug. 22, 2025**)

**1:25-cv-01179** (W.D. Tex., Judge Ezra — filed **Jul. 29, 2025**)
Offered under **Fed. R. Evid. 201/803(8)** for the **existence/timing/public availability** of filings; **not** to prove the truth of disputed statements within those filings.

SIGNATURE

Dated: September 15th, 2025

/s/ Curtis Meeks

_____

102 Jefferson Cove

Elgin, Texas

786-218-0773

## CERTIFICATE OF SERVICE

I certify that on September 15th 2025, I caused a true and correct copy of the foregoing filing(s), including , to be served upon all counsel and parties of record via the Court's **CM/ECF** system (for registered users) and by **electronic mail** to the addresses listed below. If any party is not a registered CM/ECF user, service was accomplished by email.

Dated: September 15th, 2025

/s/ Curtis Meeks

_____

102 Jefferson Cove

Elgin, Texas

786-218-0773